No. 31,488

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF GREEN-
WOOD, *Appellee* and *Cross Appellant,* v. SCHOOL DISTRICT No. 4
IN GREENWOOD COUNTY, *Appellant.*

No. 31,489

THE BOARD. OF COUNTY COMMISSIONERS OF THE COUNTY OF GREEN-
WOOD, *Appellee* and *Cross Appellant,* v. THE CITY OF EUREKA,
GREENWOOD COUNTY, *Appellant.*

(31 P. 2d 723.)

Opinion
filed April 7, 1934.

*Clay C. Carper, J. F. Darby* and *Homer V. Gooing,* all of Eureka, for the
appellants.

*I. F. Benest,* county attorney, *Thomas C. Forbes* and *Carl C. Chase,* all of
Eureka, for the appellee and cross appellant.

The opinion of the court was delivered by

DAWSON, J.: These two actions were begun by the board of
county commissioners of Greenwood county against the city school
district of Eureka and against the city itself to recover large sums
of money which the county treasurers had overpaid to defendants
in the distribution of taxes.

For many years it was the custom of the county treasurer to
disburse to the local taxing districts—cities, townships and school

districts—the full amount of taxes levied by them regardless of whether he had actually collected such amounts in full or not. Prior to 1923 this practice had been a matter of minor importance. The county treasurer had an account designated "county redemption account," which he debited with whatever amounts he had bid for property sold for delinquent taxes under order of the county board and pursuant to Laws of 1921, chapter 288 (R. S. 79-2324 *et seq.*); and when delinquent taxes, interest and penalties were collected he credited that account with proper entries to correspond. Beginning in 1923, however, these overpayments to the various taxing districts on mere estimates of what their tax levies *ought* to produce began to grow, and in succeeding years rose to very substantial amounts. Thus in eight years, 1923-1930, inclusive, such overpayments to the city of Eureka for general taxes levied, but not collected, totalled $10,433.62, and for special taxes similarly levied, but not collected, $44,794.41, a grand total of $55,228.04. During the same eight years the county distributed to school district No. 4 (Board of Education of Eureka) an aggregate of $15,076.74 under the same custom of paying over the full amount of money its tax levy ought to raise, and irrespective of the actual amounts collected from taxpayers pursuant to such levies.

When the "cash-basis" act (Laws 1933, ch. 319) took effect the county board filed its claims with the city and school district for these excess disbursements. The claims were disallowed; the county appealed, and the claims were certified to the district court as the statute provides.

At the suggestion of the trial court pleadings were filed. Plaintiff's bill of particulars set out the facts narrated above. The city answered, admitting certain facts, demurred to their sufficiency, denied the correctness of the claim and all liability under it, invoked the statute of limitations, and challenged plaintiff's authority to maintain the action. The school district's answer was to the same effect, and it also challenged the court's jurisdiction to adjudicate the controversy.

The court summarily overruled the legal objections raised against plaintiff's claims, and evidence on the merits was introduced at length. The county's claims were well established, and plaintiff was awarded judgment thereon; but the court also held that defendants were entitled to offsets or deductions for their proportionate shares of the interest received by the county on delinquent taxes

when such taxes were eventually collected. The court also found that a certain compromise of taxes on a Masonic temple in Eureka effected by the board of county commissioners had been improvidently made, and that the city and school district should each have a credit for the respective amounts lost to their revenues because of it.

The city and school district appeal against the judgments awarded against them, and the county presents a cross appeal on account of the deductions allowed against its claims in full.

On behalf of defendants it is contended that most of the amounts claimed by the county were barred by the three-years provision of the statute of limitations. We must hold otherwise; the litigation involved no merely proprietary rights of the litigants, but concerned them all in their governmental capacities; consequently the statute of limitations had no application. (*Nemaha County Comm'rs v. City of Seneca,* 138 Kan. 895, 898, 28 P. 2d 1034.) Defendants cite cases governed by the statute of nonclaim, but its relevancy cannot be discerned.

Turning next to the matters urged in plaintiff's cross appeal, its counsel deal at some length with the question whether plaintiff was the proper party to bring the actions. If we had any doubt on that point this particular labor of counsel would be both instructive and helpful, but we regard the point as affirmatively settled both by statute (R. S. 19-212), by the general practice, and by many precedents. In *Kerby v. Clay County,* 71 Kan. 683, 686, 81 Pac. 503, this court quoted approvingly from the case of *State, ex rel., v. John Zumstein et al.,* 4 Ohio C. C. 268, 270, as follows:

"There can be no question but that the board of county commissioners, the financial representatives of the county, is the body having the right to sue for and recover all sums of money due to the county, unless the statutes of the state specifically in certain cases impose that duty upon, or give that right to, some other officer or person—and no other person or officer is authorized to sue for or recover any such money demand unless the right to do so is conferred by statute."

See, also, *City of Frankfort v. Warders,* 119 Kan. 652, 654, 240 Pac. 589, and citations.

The county also contends that defendants were not entitled to credit for the interest which the county received when delinquent taxes were collected. The statute under which this interest was collected was R. S. 79-2004, which, while it declared that the penalties collected should be credited to the "county fund," was silent

on the specific matter of interest; and in *Board of Education v. Wyandotte County,* 116 Kan. 38, 225 Pac. 1063, this court held that the interest collected on delinquent taxes became a part of the taxes and should be disbursed therewith to the several taxing districts proportionately. Whether the later statute, R. S. 1933 Supp. 79-2004, which expressly deals with the disposition of interest collected with delinquent taxes, has changed our ruling in the Wyandotte county case, *supra,* is of no present concern, since it was not enacted until after the matters presented in this appeal were decided.

On behalf of the county it is argued that the rule of the Wyandotte county case, cited above, is inapplicable because at all times the defendants received the full amount of the taxes levied; they were not kept waiting until the delinquent taxes were collected, and they were not in any wise discommoded by the delinquencies of taxpayers. And, on the other hand, the county supplied the city and school district with the full amount of the sums of money levied by them regardless of tax delinquencies, in the reasonable confidence and expectation that the taxes would eventually be paid and the county would receive the interest. It is argued that unless this equitable right to the interest on delinquent taxes is recognized there would be little inducement for the county to adopt the provisions of R. S. 79-2324 *et seq.,* which authorized the plaintiff board to bid in for the county all property sold for nonpayment of taxes. The only fault in that argument is that there was no statutory authority for the county to advance to defendants any moneys for taxes not collected in their behalf, and consequently no statutory authority to exact interest from them for the advance disbursements thus made. A majority of this court holds that the city and school district were entitled to their proportionate shares of the interest on their distributive shares of delinquent taxes.

In the oral argument a good talking point was made against the trial court's deduction from the county's claim on account of loss of revenues to defendants by reason of an "improvident" compromise of delinquent taxes on the Masonic temple. Without giving assent to what might appear to be judicial intrusion in a matter exclusively vested in the county board and not subject to review collaterally, nor otherwise, except for fraud, it is not clear that the cross appeal brings this particular point squarely before this court for review.

In these actions no reference is made to the possible bearing on

any rights of these litigants which might be based on the annual settlement of the fiscal affairs of the county and its minor subdivisions. It is rather obvious that R. S. 19-507, 19-508 and 79-2511, which regulate those settlements, have not been followed, otherwise these claims, covering eight years' overpayments and which have occasioned this litigation, could scarcely have arisen.

The other matters urged by the litigants have been carefully considered, but we discern nothing which calls for further discussion.

The judgments in all respects are affirmed.