CARROLL, DONALD K., Judge.
The appellant, Hudson Kinsey, has filed in this cause a motion denominated “Motion for Order Allowing Notice of Appeal Nunc Pro Tunc, and for Extension of Time to Perfect Original Appeal.” This motion was filed under the following extraordinary circumstances:
Kinsey was tried and convicted by the Circuit Court for Leon County of the crime of armed robbery, and on April 29, 1963, he filed a notice of appeal seeking our review of the sentence imposed upon him pursuant to such conviction by the said court on February 1, 1963. This notice of appeal was duly filed on April 29, 1963, by a reputable law firm of Monticello, Florida, as attorneys for Kinsey. No other paper of any kind was filed by either party to the appeal until June 21, 1963, when the said firm filed a notice of dismissal, the contents of which are described below. On the same date another paper was filed, signed by Kinsey’s mother, entitled “Abandonment of Appeal and Release of Attorney,” which will also be described below.
In the said notice of dismissal filed before this court in this cause on June 21, 1963, the said attorneys of record for Kinsey stated that after the latter’s trial, conviction, and sentencing they were employed by his mother, Mrs. Anita Kinsey Sauls, to investigate the feasibility of, and to initiate, an appeal on Kinsey’s behalf; that all negotiations concerning the appeal were conducted with Kinsey through his said mother, who paid all fees, and thereafter the notice of appeal was timely filed; that, after a thorough analysis of the matter, it was agreed between the said attorneys and Kinsey, through the mediation of his mother, that “the record did not warrant the prosecution of an appeal and that such a procedure would be too costly and futile”; that thereupon the said attorneys drafted a document denominated an “Abandonment of Appeal and Release of Attorney,” which was executed by Kinsey’s mother, according to the said notice of dismissal, by and with the consent of the appellant as appellant’s mother alleged; and that, therefore, the said attorneys “pursuant to Rule 3.13(b) of the Florida Appellate Rules hereby filed this Notice for Dismissal of Appeal voluntarily upon the insistence of appellant’s mother who has been authorized by appellant to take this action.”
*110 On the same date on which the foregoing notice of dismissal was filed, the said document signed by Mrs. Sauls was filed, stating that she was the “mother and confidential advisor” of Kinsey, who was then incarcerated in the State Prison at Raiford, Florida, that she was convinced that the appeal would be futile and a waste of the court’s and counsel’s time, and that she authorizes and instructs the said counsel “to take no further action on said appeal” and releases the counsel “from all obligations and responsibilities thereunto appertaining.”
Rule 3.13, subdivision (b), of the Florida Appellate Rules, 31 F.S.A., pursuant to which the above notice of dismissal was expressly filed, provides as follows:
“b. Voluntary Dismissal of Appeals. The appellant, or the appellant and ap-pellee jointly where the appellee has assigned errors, may procure dismissal of an appeal at any time by filing with the clerk of the Court a notice for dismissal.”
In this appeal the appellee had not assigned errors, so the reference in the above provision to the joint filing by the appellee is inapplicable here.
Pursuant to the mandate of the quoted provision of the rule, this court on June 24, 1963, entered an order dismissing the appeal in accordance with the said notice of dismissal.
The next paper filed in this cause was on August 24, 1965 when the public defender of the Second Judicial Circuit of Florida, as attorney for Kinsey, filed in this court a motion denominated “Motion for Order Allowing Notice of Appeal Nunc Pro Tunc, and for Extension of Time to Perfect Original Appeal,” which motion is now before us for disposition.
In the said motion Kinsey, through the said public defender, recites that his notice of appeal was timely filed and that his appeal was dismissed by an order which we entered on June 24, 1963, but he further alleges in his said motion that the said order “was entered wrongly” on the said notice of dismissal signed by his then attorney, “to which notice defendant was not advised and his rights therein prejudiced by said Notice of Dismissal.”
Attached to Kinsey’s said motion, as in further support thereof, is a copy of an order entered on July 25, 1965, by the United States District Court for the Middle District of Florida.
The said federal order was entered in a habeas corpus proceeding instituted in the said United States District Court by Kinsey against the Director of the Division of Corrections, State of Florida, the case being numbered in that court as “No. 65-183 Civ. T.”
In that order the federal court made the following findings, among others: that a timely notice of appeal had been entered in our court on behalf of the petitioner, Kinsey, but that we had dismissed the appeal “pursuant to action taken by the petitioner’s employed attorney. Such dismissal was without the consent of the petitioner, personally. The petitioner was denied the equal protection of the Florida law extended to other citizens of the State, to-wit: the right of appellate review.”
In the said order the federal court then adjudged and decreed the following:
“1. If possible under the laws and constitution of the State of Florida, petitioner is to be extended a right of appeal.
“2. If such right is foreclosed by the laws or the Constitution of the State of Florida, or is otherwise not forthcoming by any action other than petitioner’s, the petitioner’s conviction will be immediately held invalid because of the constitutional infirmity, a denial of equal protection and such invalidation will operate without any further action by this Court.”
By virtue of the foregoing federal order, this court is thus confronted with a serious *111 constitutional dilemma in which the United States District Court has solemnly declared in effect that, if this state court does not violate the rules laid down by the Supreme’ Court of Florida under the exclusive and final power granted it by the Constitution of Florida, the United States Court will automatically reverse his conviction as invalid. In fact, an even more fundamental principle is involved here—the basic authority of a lawyer to represent and hind his client before the courts—a principle which we will discuss later in this opinion.
At the general election held in November of 1956 the people of Florida adopted an amendment to Section 3 of Article V of the Constitution of Florida, F.S.A., which amendment reads as follows : “The practice and procedure in all courts shall be governed by rules adopted by the supreme court.” Pursuant to this final and exclusive authority the Supreme Court of Florida has adopted the Florida Appellate Rules, 168 So.2d 758, in an opinion declaring that those rules are applicable to all appellate proceedings in the Supreme Court, the district courts of appeal, and the circuit courts and that those rules shall supersede all conflicting rules and statutes.
Beyond any question the said Florida Appellate Rules were applicable to Kinsey’s appeal when his attorneys of record filed the above-discussed notice of dismissal and when we entered our order of dismissal based upon the said notice. Furthermore, it is beyond question that this court is bound by the Florida Appellate Rules and that we are powerless to amend or waive them. ■
It is our view that the entry of our said order of dismissal was made mandatory by two rules in the said Florida Appellate Rules—Rule 3.13, subdivision (b), which we have quoted and discussed above, pertaining to the voluntary dismissal of appeals, and Rule 2.3, subdivision (d), paragraph (1), which reads as follows :
“In all matters relating to the prosecution or defense of any matter in the Court, the attorney of record shall be accepted as the agent of his client, and any notice by or to such attorney, act of his, or step taken by him in the prosecution or defense of such proceeding, shall be accepted as the act, notice to, or step of the client.”
Under a literal reading of the just-quoted provision as well as under its spirit, we were and are required to consider that the notice of dismissal which was filed by the attorneys of record for Kinsey in his appeal was filed by them as his agents and that such filing constituted the act of Kinsey himself.
Even if the Supreme Court of Florida had not included the last-quoted provision in the Florida Appellate Rules, we would feel obliged to draw the same conclusion by virtue of our consideration of the most important and basic principle of the American-English system of jurisprudence—the right and privilege of a lawyer to act for and bind his client in court proceedings.
This right and privilege may indeed be considered the cornerstone of our court structure. Without that right and privilege our court system would be unworkable, and the ideal of the “rule of law” would be unattainable.
If a client would be free to wait two years, as Kinsey waited here, before disavowing an act of his attorneys of record in a court proceeding that terminated adversely to his interest, there would be little or no stability or certainty in any court decisions, for decisions would always be subject to avoidance upon the client’s claiming that the actions of his attorney that resulted in adverse rulings had not been understandingly concurred in by him. In view of the extreme complexity of the law today—so great that a lawyer who devotes his life to studying a small area of the law can hardly expect to know all the law even in that area —a layman involved in a court proceeding must depend to a large degree upon the knowledgeable advice of his lawyer and cannot hope to comprehend thoroughly all *112 of the acts and procedures undertaken by his lawyer in his behalf. If his lawyer could not bind him without his approval, a court could hardly read a lawyer’s brief or hear his oral argument without ascertaining positively that the client had approved every word written or spoken.
Probably no person engaged in any occupation in recorded history has been accorded so much power over the lives, property, and welfare of others as has the lawyer. This awesome power which he possesses as a lawyer with respect to the client who has selected him as his legal representative in a court proceeding is essential to the proper administration of justice.
Because he possesses this power which is so essential to the rule of law, the lawyer has long been required to live up to the highest standards of ethical conduct and responsibility imposed upon any occupation or profession. If he fails to abide by any of these standards, he subjects himself to severe disciplines ranging in severity to disbarment from the practice of law for the remainder of his life. Before he is permitted to become a lawyer, he must establish that he meets the highest standards of legal education and moral character. In view of the foregoing requirements and the long record of faithful service and dedication to justice of the members of the legal profession, we think that the above power of lawyers over the lives, property, and welfare of their clients involved in court proceedings can safely be, and must be, reposed in the members of the bar.
In the light of the above considerations, we have reached the conclusion that we correctly entered our order of June 24, 1963, dismissing Kinsey’s appeal, based upon the notice of dismissal filed by Kinsey’s attorneys of record, and that we had no alternative to entering such an order in view of the provisions of the Florida Appellate Rules discussed above. We further are of the opinion that Kinsey’s motion filed on August 24, 1965, states insufficient grounds, legal or equitable, for reinstating his appeal, if we had the power to reinstate it, which we think we do not have. Accordingly, the said motion must be and it is
Denied.
RAWLS, C. J., and JOHNSON, J., concur.