(784 P.2d 387)

No. 63,589

PAUL W. SCHOWENGERDT, *Appellant,* v. KANSAS DEPARTMENT OF REVENUE, *Appellee.*

Opinion filed December 29, 1989.

*John A. Reynolds,* of Sweet & Boyer, of Salina, for appellant.

*Bill Cummings,* legal intern, and *Brian Cox,* of Kansas Department of Revenue, for appellee.

Before ABBOTT, C.J., DAVIS and GERNON, JJ.

GERNON, J.: Paul Schowengerdt appeals from the district court's affirmance of the suspension of his driver's license by the Department of Revenue. Schowengerdt contends on appeal that the driving privileges of a driver whose license has expired may not be suspended.

In October of 1988, Schowengerdt was arrested for speeding. At the time of his arrest, he was given an Intoxilyzer test, which he failed. The officer's notice of suspension indicated Schowengerdt's license to drive had expired. Schowengerdt requested a hearing concerning his suspension. The hearing officer of the Department of Revenue affirmed the suspension.

Schowengerdt timely filed a petition for review to the district court, which affirmed the holding of the hearing officer. Schowengerdt then appealed.

As a preliminary matter, the Department of Revenue argues that Schowengerdt lacks standing. The Department argues that Schowengerdt has no personal stake in the outcome of this case because he alleges he had no right to drive even before his license was suspended. We reject this argument. Schowengerdt's suspension obviously could affect him in many ways. He might be prevented from obtaining a driver's license, or, if apprehended while driving, his status of having a suspended license would constitute a Class B misdemeanor. Therefore, we conclude Schowengerdt has standing to raise the issue before this court.

Schowengerdt's license had expired when he was arrested for speeding and failed the Intoxilyzer test. He argues that the Department of Revenue cannot suspend his driver's license because he had no driver's license to suspend.

Schowengerdt notes that K.S.A. 1988 Supp. 8-235(a) provides: "No person, except those expressly exempted, shall drive any motor vehicle upon a highway in this state unless such a person has a valid driver's license."

Schowengerdt cites two Alaska cases, both criminal in nature, which hold that, because there is no "innate privilege to drive" and the defendant had no license, it was impossible for the State to have suspended his driving privileges. *Roberts v. State,* 700 P.2d 815 (Alaska App. 1985).

The Department, however, asserts that the Kansas implied consent law is to be liberally construed to effectuate its obvious purpose of protecting the safety and welfare of the motoring public. *State v. Adee,* 241 Kan. 825, 829, 740 P.2d 611 (1987). The Department contends that the Alaska cases cited by Schowengerdt are distinguishable from the present case. For example, in *Francis v. Municipality of Anchorage,* 641 P.2d 226 (Alaska App. 1982), the 15-year-old driver never had a license to drive and was charged with driving while his license was suspended. In *Roberts,* the appellant was never licensed by the State of Alaska and his California license had expired prior to his arrest in Alaska.

In *Fielding v. State,* 733 P.2d 271 (Alaska App. 1987), the defendant was validly licensed to drive at the time his license was revoked for three years. Later he was convicted of driving while his license was revoked, which added one additional year

to his revocation. Three years later he was convicted of driving under the influence and again of driving while his license was revoked, which added two more years to his revocation. So far as the last conviction was concerned, his license had expired prior to the last conviction, which then added two more years to the revocation.

The Alaska court distinguished the holdings in *Francis* and *Roberts* in the *Fielding* case and affirmed Fielding's conviction, reasoning that the revocation was valid for the period ordered even though his license had expired when he was convicted after the expiration.

The Department correctly points out the rules of statutory construction as noted in *State v. Adee*, 241 Kan. at 829:

"At this point, the applicable rules of statutory construction should be stated. The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. *Harris Enterprises, Inc. v. Moore*, 241 Kan. 59, Syl. ¶ 1, 734 P.2d 1083 (1987); *State v. Cole*, 238 Kan. 370, 371-72, 710 P.2d 25 (1985). . . . Where a statute is designed to protect the public, the language must be construed in the light of the legislative intent and purpose and is entitled to broad interpretation so that its public purpose may be fully carried out. *Johnson v. Killion*, 178 Kan. 154, Syl. ¶ 4, 283 P.2d 433 (1955). A construction which renders part of a legislative act surplusage is to be avoided if reasonably possible. *American Fidelity Ins. Co. v. Employers Mut. Cas. Co.*, 3 Kan. App. 2d 245, Syl. ¶ 4, 593 P.2d 14 (1979)."

Following the rules of construction in *Adee*, we conclude that, if a license or privilege exists, it is subject to suspension, and it can be suspended for any period permitted by law. Once suspended, the suspension remains in effect for the full period ordered, regardless of whether the originally valid license might otherwise have expired at some point during the period of suspension. To hold otherwise would be counter to logic and would allow a driver to benefit from letting his driver's license expire. It is the privilege to drive that is suspended. The license itself merely represents that privilege.

Affirmed.